We appreciate your coming, and the reason we did not accept your invitation is the Wildcat Strike issue. The other issues, they took some time to brief, but I think we understand those. We're not precluding you from talking about them, but we wanted to get your additional input on the Wildcat Strike issue, both the law and the facts. Good morning, Your Honors. May it please the Court, my name is Jerry Pigsley, and I represent Noah's Ark Processors, and I'm the respondent in this case, and Noah's Ark is before the Court on a petition for enforcement of an NLRB order. I'm going to focus on the Wildcat Strike issue, and I appreciate the Court giving us that heads-up. Noah's Ark's position is that dissenting board member, William Emanuel, he found that Noah's on March 27, 2018, and any remarks that were made to them were not unlawful. Board member Emanuel found his fellow board members, Kaplan and Ring, had misapplied a Silver State test, which sets forth the board's current standard for assessing whether an unsanctioned walkout by union-represented employees is protective of the meaning of the act. And Noah's Ark asked this Court to find that the conduct of the 10 employees was not protected. The board member, when he looked at the record, he found some critical facts. One was, five days after the union presented its non-economic proposal at the first bargaining session, 20 employees then wanted to talk about raises, or they had heard a rumor about a new hire starting at a higher wage, then they were paid. And they ceased working in order to press these demands. This is what board member Emanuel found. He found that the employees and a union steward who were, a union steward was enlisted to help because she could speak English better than the other ones, they never, the employees or the union steward, never informed the union that they were seeking to come to the company and ask about pay. Of the 20 employees who walked off the job, 10 returned to work, 10 employees turned in their supplies and they went out to a parking lot. The plant manager offered the employees the option of finishing their work and discussing the issue after work. They declined. In fact, board member... Well, give me a, first of all, give me a thumbnail, your understanding of the Silver State doctrine. Yes. The Silver State's doctrine says that, in essence, the dissident employees bypass their employer. That's the first test. And the second test is, was the employee's position inconsistent with the union's position? And frankly, what you have here is, you had these 10 employees not going through their collective bargaining representative, because the collective bargaining representative never did bring a wage proposal to the table. And then you have these employees bringing forth a complaint about why they're not being paid higher, that they heard a rumor about someone being paid higher. And board member Emanuel found that there was clearly a situation here where this wasn't something that could be argued was consistent with what the union was proposing to the company, because they hadn't even proposed anything, the union hadn't even proposed anything to the company yet. What about the fact that the union steward was speaking for the group of employees? Does that change anything? I know the union steward's duties are different, but... Right. Board member Emanuel found that that steward's responsibility was towards safety, not towards  That steward was not involved in any negotiations with the company. So, most of the employees in this meatpacking plant speak Spanish. But does that provide, I'm just wondering whether, I know you want to go to Emanuel because it ends up favoring the company, but I wonder if that particular fact provides substantial evidence for the board majority decision. Well, I don't think that the board majority even relied on the union steward. I think the board majority said that, in essence, we don't believe that they were negotiating over wages. They were just complaining about wages. What about the grievance? I think the board majority did rely on the fact that the union later filed a grievance on behalf of the employees who were terminated. And that was filed after. There was no agreements raised during that confrontation with management that day. And I think that there was clearly an emphasis that day to give the employees an opportunity to go back to work. And the employees then sent a request to talk about this to the company after the fact. But I think that the key was, this wasn't anything that the union had their stamp of approval on saying, you can go approach the company. So they were, in essence, they were acting on their own. And by acting on their own, that took away the shield from being terminated by the company because they were given the opportunity to go back to work. And they didn't. So we would ask that the board's decision be not enforced as to the Wildcat strike. Well, their position was inconsistent with the union. Right. So what are the Silver State authorities on whether that inconsistency is necessary to lose protected status? I think what you have to show is that there was something from the union to indicate what their position on wages was. At that time, there was nothing from the union as to what their position on wages was. The board members that were in the majority found that they worked together. You were in a holdover position, right? Right. Right. In fact... And how long did the terms of the expired contract continue to apply? The contract had actually expired when this all happened. Well, of course. That's the key, in my view, as to why this is an unusual Silver State's issue. Right. Case. So you have to take into account the impact of it had expired, the no-strike clause no longer applied, the union had not yet developed a position. But it presumably wanted to start where the old contract left off. Exactly. So were these demands any different than that? They are objecting to, I think, what some would call scabs being paid more than they were, or new employees. New employees. Right. And I think that not having the union step forward and come to the aid of these employees and say, okay, our position would be this, which would be what the employees were asking. When would the union need to have done that? They should have done it that day. They had, supposedly, a union steward. Who were the negotiators that had to get on the ball here? Well, you have the union steward can call the union office. Yeah. Okay. Go ahead. They could call their union office and have someone come right down to the plant and raise this issue. The union office was there? The union office is in Grand Island. The company is in Hastings. It's only about an hour away. Okay. And where were the people who were negotiating for the union in all these meetings where your client was stonewalling them, so to speak? All the negotiations were held at the union office in Grand Island. Were they out-of-town negotiators or anything? For the union? For the union. A number of the officers did not live in Grand Island, but the representatives that worked in this plant were in that area. But you would have the president of the union, who wasn't from that area, was from Nebraska, obviously, but was a little further away, come to the plant. And they did have contact with folks at the plant. So there clearly could have been an opportunity given the union to come in and say, we are supporting these efforts by the employees. There's nothing in the record to indicate that the union ever came to their aid. I was going to say, when did the union first advise the employer that these were not wildcat strikers, so to speak? I don't believe there's anything in the record indicating that they weren't wildcat strikers. Well, that the union agreed with the position they were taking. I don't believe there's anything in the record indicating that. In fact, in that set of negotiations, there never was a wage proposal made by the union. Well, I understand. But some months later, your client made its first offer, its final offer, and that was an unfair labor practice that I think substantial evidence supports. So the union was, the fact that it didn't have a more aggressive or well-defined position on the table I think could be blamed at least in part on your client's attitude to the bargaining. But nonetheless, if the union was notified of this, they presumably were certainly aware of protected activities and the silver state response to the Supreme Court's position in what's the old case, Emporium. Yes, about wildcat strikers. Yeah, and so the union should have gone to the employer, I would think, and said, wait a minute, you shouldn't, withdraw that, you shouldn't terminate them. They were not taking a position contrary to our position or our interests. Either you say there's nothing in the record. I don't believe there's anything in the record, Your Honor. Did the silver state line of cases shed any light on whose burden it would be to put that in the record if it was necessary? I believe that the union would have the burden to show that it was protected activity. The employer would have the burden to show that when they engaged in the termination that they could show that that was fact. So there are probably 25 board cases on both sides of that question. Yes, Your Honor. Thank you. Ms. Sheehy? May it please the Court, Barbara Sheehy, and I just want, for the National Labor Relations Board, and I just want to thank the Court for at the beginning of the argument letting us know what you wanted to hear about. That's very helpful. And I also want to say it's nice to be in person. This is my first in-person argument since March 2020. So anyway. First time we've been in St. Louis in 21 months. Oh, well, you're the same, right? So anyway, I'll start with that. Thank you. So let's talk about the Wildcat Strike. So one of the things that I want to make very clear, because you closed out with opposing counsel there on the burden, is it's the employer's burden. Once it's shown that employees engaged in protected activity, which I don't think there's any question here that they did, the employees were protesting wages, and it wasn't an increase in wages. Let's also be very clear what the Board found. The Board found that the employees were responding to or asking management about rumors they had heard that there had been sort of a decoupling between seniority and increased wages, which is a standard sort of, I think, wage structure for unions to negotiate. So they were upset at these rumors that they'd heard, that newer employees basically were making higher wages than more senior employees. So they weren't asking for what the Board never found, and it was never shown, that they were asking for an increased wage, that they were looking to bargain over wages. What they were doing, as the record shows, is they were complaining and trying to find out why is it that what we're hearing, lower or newer employees are making more money than more senior employees, which is in conflict with their post-expiration terms. So once the employees engage in that activity, that's protected by Section 7. There's no question that raising terms and conditions of employment to your employer is a protected activity. Even where you have a union, you are allowed, under the law, to do that. So the burden then comes to the... But even when there's what, did you say? Even when there's a union, you're still under the law, permitted. You don't sacrifice your Section 7 rights just because there's an exclusive representative. So the Board tries to harmonize the Section 9A, obligation of the exclusive representative, with the continued recognition of Section 7 rights to act with mutual aid and protection in concerted activity. So the burden here... I'm not sure any member of the Board has read Emporium. In Emporium, we had employees who had evidence that the union and the employer were combining to perpetuate race discrimination. And they were complaining about that and wanting to bargain about that. And the court said, that's unprotected. Now, if anything, if any collective activity would be protected, you would think it would be that. And the Supreme Court said, that's unprotected. Now, Silver States, I know, is trying to draw a line with all this. But I think they're losing sight of the dramatic Supreme Court precedent that we're interpreting. And I think that's an interesting point. And I think the Board, this Board, in this decision, I think, recognizes, and they've done it actually in subsequent decisions, CCI, or CC1, I think was another one of them, where the Board is dropping the footnote. Yeah, but in CT1, of course, they won on the law and lost on the facts. And that, it seems to me, is kind of a parallel problem here. Right. So, and respectfully, so I think the Board is recognizing that at least there should be a discussion and a briefing on this issue when the right case presents itself. Unfortunately, in this case, or fortunately, depending on, for me, I suppose it's fortunately, the issue wasn't presented. You've seen the violence in this case. If this evidence, if this case, we have an expired contract. We have an employer and union maybe unable to conduct ongoing negotiations to the disadvantage of the employees. And maybe one side was unwilling, but maybe both sides were unwilling. But the union had no position. The no-strike clause was gone. And if the employees were observing, learned of, the employer's freedom to hire replacements, non-union replacements, was being on the wage side to their disadvantage. And the union wasn't getting anything done about it. And they say to the employer, we want a bargain about this. We're not getting any help from the union and you're not treating us right. And we want a bargain. That's got to be emporium. Right. Thankfully, that's not this case. Well, I think, I see, I haven't read all of, I'm not sure that that's not this case. The question is, I mean, when they say, you know, when the employer says, no, you've got to stay at work and ten go back to work and the rest go to the parking lot and do what I have witnessed, a true wildcat strike, did the board, is there substantial evidence supporting the board's view of what they were doing? Absolutely. And I'm going to try to answer that in two different parts. The first, the substantial evidence is, I don't think I finished a thought that I was trying to get out. No, no, no, it's not your fault. You know, anyway, the burden, once you're asserting the affirmative defense, so here the affirmative defense is you have lost protection of the act. You've engaged in activity that otherwise would be protected by the act, but this is going to, you're going to lose protection of the act because of certain circumstances. And here those certain circumstances are, we're looking through the lens of Silver State. Did you engage in a wildcat strike that is unprotected? The employer bears that burden because that's an affirmative defense. So when I say there's substantial evidence on the record, what you have is the boards looking at the evidence that was there, and a lot of it is there, I recognize there's not evidence that the union affirmatively came forward, I don't believe at least, that the union affirmatively came forward and said, we support everything that these employees are doing. But I think the question, rather than look at it from that framework, let's remember who the burden is with. The employer had the obligation to show that the union's position, or the employee's position rather, was contrary to the union's. So if the best, the record has- See, I don't think contrary is- Inconsistent. I'm sorry, your honor. Inconsistent. That's a point well taken. Independent, I would say, is maybe even a better word. I don't think- Isn't it bypass? Bypass in the union, which is sort of independent. Independent, if it's found that they were trying to bargain over the wages. So there were two different aspects to it. There was the board's finding, again, we'd say it's supported by substantial evidence, that what they were doing was asking questions and demanding answers as to rumors that they had heard about the way that wages were coming down. There was no demand to bargain. Ortiz never said that they were looking to bargain over it. In fact, when the employer sort of offered to bargain about it later, or talked, to characterize it fairly, to talk about it later, which could have been seen as an offer to bargain about it, they declined that. So as for where it's independent, if it's an independent demand to bargain, then yes, that becomes irrelevant, I think, under the Silver State analysis. And you're going to start walking a finer line towards you've lost protection under that wildcat strike. But here, you have the board dealing with not a lot of evidence, period. And that's the fault of the employer. The employer had the burden to show, to bring forward the evidence to show, why did these employees lose protection of the Act when they engaged in a work stoppage? It's not enough to speculate that, you know, what they, that there were new employers, there were new hires, and that's what they were responding to. That could have been. That could have been what they were hearing, and that because you were at the expiration of a contract, that would explain the wage differential, and that's what they were upset about. There's nothing in the record that shows that. We're engaging in speculation here. What we know is the conversations Ortiz had. Have you got a case or two on this burden question? I believe Silver State addresses the, that as an affirmative defense, it's the employer's obligation to show that they've lost protection of the Act. So I believe Silver State, and all of its progeny, in fact, I think recognize that if, once you engage in a Silver State analysis, the party asserting. But the bypass question, you know, we may have a burden of going forward issue here, too. Because the union, the union would be in the best position to come forward with evidence that this was not, they were not bypassing us. In which case, the ultimate burden may stay with the employer, but I. Sure, the best evidence, certainly. So let's look at what we have. As a law clerk 60 years ago, I worked on a case which turned on, as it turned out, the burden of going forward in a labor case. Right, so let's look at what the union, what we do have from the union, right? We have the union file the grievance on their behalf. And I know there was some discussion about that was, well, that was retroactive. But that's, that's the nature of a grievance, right? You're grieving something that's already happened. Grievance is never going to be filed sort of preemptively. In the grievance, though, did they say, you know, they were acting on our behalf. We agree with everything they were doing. Was there any, any sense of that? Because that's what I'm wondering about is, because if you go and you start making demands about this, about seniority pay and things like that, I just wonder if that's, that's something the union should be doing. So I wonder if they just bypassed the union and, or whether there's some indication that the union knew what they were doing and was fine with what they were doing. I don't think there's an indication that contemporaneously the union knew what they were doing. But, and I don't believe, but we, so we, but we know after the fact, when the union filed the grievance on behalf of the discharged employees, we know that the union, that they filed, that they were advancing their interests, at least in that regard. I don't believe, and I'd be happy to be, happy to stand corrected. I don't believe the grievance is that specific that says, we understood what they did, we fully support this. I don't think it has that. And I wonder if there's a difference here. And I'm just speaking, you know, I'm no labor law expert, but is there a difference between ratifying the, you know, even on a retroactive basis, ratifying what they did and just say, and just saying something along the lines of, we think that you firing them for what they did is unfair. Which I understand the latter to be what the grievance was about. So, and that's an interesting, again, I think that is an interesting question. I think on some level, again, this would have been helpful for anybody to bring this evidence out. And I'm going to fall back on what I've already said, which you might not find that much comfort in. But that it was the employer, they could have, the employer's burden was to do this. That they could have asked the union. But certainly it would have been helpful if the, if the grievance had alleged that. But also on some level, by putting forward the grievance, on some level, the union believes that the employees were wronged. So, if the employee's position was, we should be getting, why aren't we getting the same pay that we've always gotten, which is sort of how the board characterized their conversations with management, on some level implicit in filing the grievance, I would argue, is that the union was, understood what was happening, and at least for purposes of advancing their interest, the employee's interest, was on board. What was the status of the grievance provisions in the expired contract at that point? The grievance provisions, at that point, so we've had unilateral implementations. But at that point, I think all we were doing was post-expiration, and they were still abiding by the full terms of the contract. So, the grievance procedures should have survived expiration. So, they should have been what they always were. They, ultimately, I think, if the court, if it matters, I believe it was in January, they rescinded. Which means the unions have fair representation questions lurking. Oh, certainly. But again, but there's no, again, these are all really interesting. The grievance may not support anything but that. Right, so these are all really interesting conversations, and I'm happy to continue them. But I think one of them, you'll see the theme in our brief, is that the employer did not raise any of these issues to the board. This is why you don't have a board. This is why you and I, and you and I are having this conversation, rather than the board itself. These issues just weren't raised, they weren't properly raised. So, in the context of a better- But the employer says, we don't have a contract anymore, we really don't have a union. We got a bunch of employees who say, we're walking off the job, you're fired. Right, and they can't lawfully do that. Well, but that's the question. Certainly, right, right. So, we're back to the wildcat strike. And again, I would- From the employer's understanding, the union would have a more sophisticated understanding of the legal issues here than the employer would, probably. But certainly, you would have seen a very different board decision grappling with all these questions if issues had been properly presented to them. If the employer had properly presented evidence. In fact, the employer doesn't even argue in its brief to the board or to the administrative law judge, never argued Silver State. And I would posit that they've barely done so here. All they've done is black quoted Member Emanuel's dissent. And we also pointed out in our brief, that is insufficient for them to secure judicial review. A discussion among board members, even this court has recognized, a discussion among board members itself is insufficient to secure judicial review. 10E of the National Equalities Act requires that the employer- That argument leaves me very cold. I'm sorry, did you- A dissenting position in an adjudicatory decision by a regulatory agency under judicial review. The reviewing court is supposed to treat the published dissenting opinion as just discussion among board members? Nonsense. I'm sorry, but I would encourage the court then to have, I think it's monsoon trucking, it's recited in our brief. It's an Eighth Circuit case referring to discussion amongst board members themselves. That's right. In a dissent in a published opinion? I believe so. It's under review? I believe so. I believe so. Well, but his position, he's not just discussing, he's taking a different view of the evidence. Right, but the act requires that the employer or that the party alleging aggrievement raise those issues. So, that notwithstanding, I don't want to make you uncomfortable with the 10E standard because I don't think the board needs to rely, quite frankly, I don't think we need to rely on judicial waiver or statutory preclusion under our statute. I don't think we need to rely on that. I think just on our pure substantial evidence record- The trouble with the waiver argument is all the employer's lawyer is doing is saying, I can't say it any better than the dissenting board member has my argument on appeal. Except they didn't raise it even to the board, though. So, they've never said it. It's not that they- They said what? They never raised Silver State even to the board. All the arguments you see a member of manual make, what was member of manual? They were never presented. We've lodged our brief in support of exceptions. Did they not even argue it was unprotected? They argued it was unprotected, but for, I encourage you to read the brief and certain. They argued, first, because this is a no-strike clause, I'm way over my time, but I'll finish answering this question. And then I'd like to apologize for having taken my intervener's time. They argued the no-strike provision of the contract. They argued a job abandonment, and I believe there was a, they argued the white line standard, which doesn't apply in Section 8A1. But otherwise, no, do a word search for Silver State. You will not find it. So, it's not that they are saying, you know, member of manual did a much better job than us. Member of manual is the only one who did the job here. At no point in the proceedings did they raise any of the issues that, like I said, I find very interesting that we're talking about. But a lot of times I find when I'm engaging in a super interesting conversation with the judge where I don't have the answer, it's because it wasn't presented. And I don't have anything to rely on that the board said, and they didn't say anything because they weren't given the opportunity to do it. So again, unless there are any questions, I apologize for going over and, I apologize. Thank you, we'd ask obviously for full enforcement. Thank you. Your Honor, all the intervener time has expired. The time has been expired. You may, if you have anything to say, to address, if you would point us in the record to any place that the union took a position that we should know about at the time with respect to the Wildcat Strike issue, fine. Otherwise, your time is up. Thank you, Your Honor. I do want to note that the union, as mentioned in both the intervener's and the petitioner's brief, the union did file agreements. And I believe that does document that the- Well, we know that, yeah. I just, if there's anything in the testimonial record regarding the union's contemporaneous position as this Wildcat Strike issue evolved, then direct us to that. Otherwise, we under- Thank you, Your Honor. Not that we're aware of. Thank you. Time for rebuttal. Your Honor, we would rave rebuttal. Very good. Thank you. Thank you, counsel, for coming. You can, the record will doubtless determine this because there are a lot of interesting aspects of it. And not unatypically, we get an urge to discuss them with counsel. And it is helpful to do so and to get insights into what we will find in the record when we study it more thoroughly than I have. And you've helped a lot from my standpoint. So thank you, and cases will be taken under advisement. Thank you for the opportunity to appear in person.